IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENT CARTER,

      Plaintiff,

v.                                            Civ. No. 07-1264 MV/LAM

UNITED STATES OF AMERICA, a Federal
corporation, the INTERNAL REVENUE
SERVICE, and MICHAEL J. PRYOR,

      Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Defendants' *Motion to Dismiss Amended Complaint, and Renewed Alternative Motion for Summary Judgement* [sic], filed September 26, 2008 [Doc. 37]. The Court entered a summary Order granting the motion on September 30, 2009. *See* Doc. 48. This Opinion explains the Court's reasoning.

## BACKGROUND

The following facts are either undisputed or are viewed in a light most favorable to pro se plaintiff Kent Carter. *See Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007). Carter, who is allegedly "domiciled in the geographical mass of land identified as P.O. Box 5033, Carlsbad, New Mexico," Doc. 32 at 3, failed to timely file income tax returns for tax years 1995 through 2001.[1] Accordingly, in 1998-2001 the IRS assessed federal income taxes by creating substitute returns for tax years 1995 through 1999, and in 2005 began attempting to collect those taxes with liens and

---

[1]A notice of determination by the IRS Appeals Office indicates that Carter also has not filed income tax returns for tax years 2003 through 2007. *See* Doc. 44, Ex. 1 at 4. Only tax years 1995 through 2001 are at issue here, however.

levies on his property.  *See* Doc. 22, Ex. 1 at ¶ 3 and att. 1-A, 1-B, 1-C, and 1-E.  In addition, because Carter had filed administrative refund/abatement claims with the IRS in 2007 that it deemed were frivolous, the IRS also assessed, and began trying to collect, $500 penalties for tax years 1995 through 2001.  *See id.*  Carter administratively challenged the tax lien and the underlying assessments in April 2007 and demanded the release of the lien and a refund of money that had been levied, but his challenge was denied.  *See* Doc. 1, Exs. A, B.  He was offered an opportunity to appeal the administrative decision to the Tax Court, but he did not appeal.  *See id.*, Ex. B at 1-2.

Carter filed his original federal Complaint on December 7, 2007, seeking to quiet title to property, injunctive relief, a refund of money the IRS collected using tax levies, and damages.  *See* Doc. 1.  But during the process of litigation, the IRS decided to suspend further collection on the 1995 through 1999 income-tax debts and to release all of its existing levies.  *See* Doc. 22, Ex. 1 at ¶ 6.  Accordingly, on April 10, 2008, the IRS issued to Carter another "Final Notice, Notice of Intent to Levy and Notice of Your Rights to a Hearing," setting forth the amounts Carter owed for the tax years 1995 through 1999 and informing him of his right to an administrative appeal.  Doc. 37, Ex. 1 at 3.  On May 8, 2008, Carter filed with the IRS a "Request for a Collection Due Process or Equivalent Hearing" for tax years 1995 through 1999.  *See id.* at 1-2.  During the appeals process, Carter again explained why he disputed the prior assessments, the penalties, and the proposed collection activities by raising many of the same arguments he made in his original federal Complaint, and he resubmitted Forms 1040 for tax years 1995 through 1999 that he had signed in February 2007 when he requested a refund/rebate, which also form the basis of some of his federal claims.  *See* Doc. 44, Ex. 1.  All of those returns reflected an adjusted gross income of zero, based on Carter's theory of taxation.  *See id.*

On December 18, 2008, the IRS Appeals Office issued to Carter a "Notice of Determination Concerning Collection Actions Under Section 6320 and/or 6330" pertaining to tax years 1995 through 1999, which abated several penalties previously imposed, but which rejected the rest of Carter's arguments and sustained the IRS' proposed levies.  *See* Doc. 44, Ex. 1 at 2.  The Appeals Council examined the records and found that Carter had timely been issued statutory notices of deficiency for tax years 1995 through 1999 and that he was "afforded the opportunity to challenge the merits of the underlying 1040 tax liability for the 1995, 1996, 1997, 1998 and 1999 tax years" during the hearing.  *Id.* at 3-4.  The Appeals Council also found that the pre-levy notice requirements were met.  *See id.* at 4.  But the Appeals Council concluded that the "IRC § 6020 returns" had not been properly prepared by the IRS in 2005, and it abated the penalties issued under § 6651(a)(2).  *See id.* at 6-7.  As to Carter's attempt to challenge the validity of the frivolous-return penalties imposed for the 1995-2001 tax years under 26 U.S.C. § 6702, the Appeals Council concluded that Carter had already requested and received a collection-due-process hearing with regard to those penalties, and noted that it had issued a notice of determination sustaining the proposed levy and tax lien pertaining to those penalties on October 4, 2007.  *See id.*  As mentioned above, Carter had not appealed from that 2007 determination to the Tax Court.  *See id.*

The December 2008 Notice set forth the appeals process, which requires the taxpayer to "file a petition with the United States Tax Court within 30 days from the date of this letter" if he desires to challenge the Appeals Council's determinations.  *See id.* at 1.  The Notice explained that, "[t]he courts cannot consider your case if you file late.  If an appeal is filed in the incorrect court (e.g., United States District Court), you will not be able to refile in the United States Tax Court if the time period for appeal has expired."  *Id.*

3

On August 20, 2008, before he received the December 2008 decision of the Appeals Council, Carter filed an Amended Complaint in this case *See* Doc. 32. The bulk of Carter's allegations in his Amended Complaint challenge the validity of the underlying 1995-1999 income-tax assessments, and most are legal conclusions. For example, he contends that "during the years 1995 through 2008, [he] exercised his right to sell his labor in exchange for compensation received as wages to provide for the fundamentals of his livelihood," Doc. 32, ¶10 at 5, and that he, therefore, did not earn or receive *any* taxable income, *see id.*, ¶ 17 at 6. And he complains about the "method of accounting" the United States used to calculate his underlying income tax liability in the substitute returns, contending that the Defendants engaged in "unlawful collection activity" by "failing to establish when, where, or how they applied the method of accounting . . . within the meaning of 26 U.S.C. §§ 441(a) and 446(a)." *Id.* ¶ 21, at 7, ¶ 25 at 8. Carter also contends that the United States engaged in unlawful collection activity by failing to establish when Carter's "compensation received from his labor property was involved, used, or intended to be used in violation of the internal revenue laws." *Id.* ¶ 26, at 8. Carter is confident that he does not have any federal tax liability because of his theory of taxation. *See id.,* ¶¶17 & 19 at 6.

## ANALYSIS

**I.   Applicable Legal Standards.**

   **A.  Motions to Dismiss.**

A complaint should be dismissed for failure to state a claim under FED. R. CIV. P. 12(b)(6)

> if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.' " *Macarthur v. San Juan County*, 497 F.3d 1057, 2007 WL 2045456, at *5, 2007 U.S.App. LEXIS 17008, at *16 (10th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007)). As we have explained this new

> standard for reviewing a motion to dismiss, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

*Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007) (emphasis in original). To withstand a motion to dismiss, a complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (holding that the principles set forth in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) apply to all civil actions). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. It "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

Because Carter proceeds pro se, the Court liberally construes his complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2000). The court may review and consider documents attached to the complaint that are "central to the issues presented" in deciding a motion to dismiss. *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 n. 2 (10th Cir. 2004).

**B. Motions for Summary Judgment.**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes a proper summary-judgment challenge, the "opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). In ruling on a motion for summary judgment, a Court does not weigh the evidence or make credibility determinations, *see Anderson*, 477 U.S. at 249, but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *id.* at 251-52. And in making this determination, the Court must construe all the facts in the record, as well as the reasonable inferences that can be drawn from those facts, in a light most favorable to the non-moving party. *See Worrell v. Henry*, 219 F.3d 1197, 1204 (10th Cir. 2000).

**II.     Substitution.**

The Tenth Circuit has approved the premise that "[t]he Internal Revenue Service is not an entity capable of being sued," *Abell v. Sothen*, No. 06-1165, 214 Fed. Appx. 743, *750, 2007 WL 172207, **5 (10th Cir. Jan. 24, 2007) (affirming district court's substitution, "for substantially the same reasons as set forth in the magistrate judge's recommendation, which is appended to this order and judgment,"), thus the United States must be substituted for the Internal Revenue Service.

**III.    Jurisdiction**.

The Court must always address questions regarding subject-matter jurisdiction before addressing the merits of a complaint. The federal government may be sued only if it has waived its sovereign immunity. *See Dahl v. United States*, 319 F.3d 1226, 1228 (10th Cir. 2003). "Sovereign immunity is not waived by general jurisdictional statutes such as 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1340 (jurisdiction over actions arising under the Internal Revenue Code), and 28 U.S.C. § 1361 (action to compel a government officer to perform his duty)." *Lonsdale v. United States*, 919 F.2d 1440, 1444 (10th Cir. 1990). When the United States is a defendant in an action by a taxpayer, in order for the federal court to have subject-matter jurisdiction, the taxpayer must show an "explicit waiver of sovereign immunity." *Id.* "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed," and "consent to be sued must be construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (internal quotation marks omitted). Accordingly, "[a] taxpayer who wishes to challenge the activities of the IRS in sending a notice of deficiency or issuing a notice of assessment and demand for payment must bring suit under a statute that waives the sovereign immunity of the United States." *Guthrie v. Sawyer*, 970 F.2d 733, 735 (10th Cir. 1992).

**A. Carter has not alleged facts to show a waiver of sovereign immunity for Counts I and II.**

Count I, entitled "Action to Quiet Title of Real Property" and brought under 28 U.S.C. § 2410, alleges that the United States and IRS Agent Defendant Michael J. Pryor "conspired with intent to deprive" Carter of unspecified constitutionally protected rights by engaging in allegedly unlawful collection activities. He contends that the IRS's tax liens that have been recorded in the real-property records of property that he owns in Eddy County, New Mexico, are "procedurally unenforceable" and invalid, and that the IRS has "no authority to lien" his property. Doc. 32, ¶¶ 32-38 at 10-11.

Count II requests the court to quiet the title to Carter's personal property, to release levies, and to return property to him under 28 U.S.C. § 2410 and 26 U.S.C. § 6343. Carter asserts that the United States and Mr. Pryor "caused multiple legally unenforceable administrative 'Notices of Levy' to issue against [his] personal property rights" by misapplying the internal revenue laws. Doc. 32, ¶¶ 45-52 at 13-14.

Carter's complaint regarding the tax lien references only his contentions that he owed no taxes to begin with and that Pryor failed to use proper accounting methods in assessing his tax liability, which collaterally attack the merits of his assessment.

> While section 2410(a) . . . waives sovereign immunity for quiet title actions involving tax liens, that section may "not be construed as permitting a collateral attack on the merits of a tax assessment." *Schmidt v. King*, 913 F.2d 837, 839 (10th Cir. 1990). "When the taxpayer challenges the procedural regularity of the tax lien and the procedures used to enforce the lien, and not the validity of the tax assessment, sovereign immunity is waived and the district court does have jurisdiction over a quiet title action." *Id.*

*Guthrie*, 970 F.2d at 735. Because Count I of Carter's Amended Complaint focuses on the merits

of the assessment underlying the tax lien, Carter's challenge to the lien cannot be brought under § 2410, and sovereign immunity has not been waived on that claim. *See id.*

As to Count II's challenge to tax levies, the Amended Complaint was filed *after* the United States had released its tax levies and had reissued only a notice of intent to levy. To state a claim under § 2410, the plaintiff must "'set forth with particularity the nature of the interest or lien of the United States.'" *Dahn v. United States*, 127 F.3d 1249, 1251 (10th Cir. 1997) (quoting § 2410(b)). "A noncomplying complaint does not invoke the statutory waiver of sovereign immunity and, consequently, cannot state a claim upon which relief could be granted." *Id.*. "A quiet title claim . . . first made when any liens involved no longer existed, [i]s barred ab initio." *Id.* at 1252 n.1. Because no tax levies existed at the time Carter filed his Amended Complaint, Carter has failed to state facts giving rise to a quiet-title claim under § 2410 in Count II, the United States has not waived its sovereign immunity as to this claim, and the Court must dismiss both Counts I and II for lack of subject-matter jurisdiction. *See id.*

**B. There is no waiver of sovereign immunity for constitutional claims against the United States and Carter fails to state facts to support a *Bivens* claim against Pryor.**

Several of Carter's claims allege violation of his constitutional rights through the United States' alleged failure to follow proper procedure in assessing taxes and in issuing the tax liens and levies. Count VI alleges that, by causing notices of levies on wages, salary, and other income to be issued to third parties without notice to Carter of his due-process rights, Pryor violated Carter's Fifth-Amendment rights and 26 U.S.C. § 6330(a)(1). *See* Doc. 32, ¶ 75 at 19.

Count VII contends that, with regard to the same notices of levies, Pryor never served him with the notices as required by 26 U.S.C. § 6331, thereby engaging in "unlawful collection

activities" and depriving Carter of his due-process rights. *See id.* ¶¶ 78-80 at 20-21.

Count VIII asserts that Defendants imposed excessive fines and penalties against him, falsely claimed and misled third parties to believe that Carter failed to pay a "1040" tax, and that Pryor did not comply with the proper "method of accounting" to determine Carter's taxable income under 26 U.S.C. §§ 441 and 446[2]. *Id.*, ¶¶ 86-88 at 22-23. Carter alleges that, as a result, he "has an Eight [sic] Amendment constitutional claim for excessive fines." *Id.* ¶ 93 at 24.

In Count IX, Carter contends that the Defendants imposed excessive fines and penalties by creating substitute tax returns by using "financial data . . . derived from sources false and unknown to" Carter. *Id.,* ¶ 98 at 25. Carter alleges that, because the Defendants erroneously treated the compensation he received in exchange for his labor as income, the "alleged assessment" was no more than an "excessive fine" that violates the Eighth Amendment. *Id.*, ¶ 101 at 26.

Count X contends that Defendants failed to comply with 26 U.S.C. § 6751(b) by failing to reply to Carter's demand to produce evidence showing that they obtained approval from the Secretary in writing prior to or after imposing frivolous filing penalties for tax years ending December 31, 1995 through 2001. *See* Doc. 32, ¶¶105-108 at 27. Carter asserts that the penalties were therefore unconstitutionally excessive under the Eighth Amendment and an unlawful collection activity under 26 U.S.C. § 7433. *See id.* ¶ 110 at 28.

Generally, federal officials may be subject to suit in their individual capacities and may be

---

[2] Sections 441(a) and 446(a) concern whether a *taxpayer* must use a calendar or fiscal tax year and whether he must use the cash or accrual method of accounting for income and expenses. They do not apply when the IRS creates a substitute return based only upon income information that has been submitted by third parties. *See* § 446(b) ("if no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the option of the Secretary, does clearly reflect income").

found personally liable for monetary damages for alleged violations of federal constitutional rights in the course of their federal employment. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971). "There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). And "[t]he United States and its agencies are not subject to suit under *Bivens*." *Dahn*, 127 F.3d at 1254. The Tenth Circuit has held that "[i]n light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are not subject to *Bivens* actions," except in limited circumstances that do not apply under the facts of this case. *See id.* when there are alternative means of recourse for a taxpayer to challenge a tax assessments' legality and obtain review of the assessment procedures, an agent may not be sued as a means of circumventing that process. *See National Commodity & Barter Ass'n*, 886 F.2d 1240, 1248 (10th Cir. 1989). There are "all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [an agent]." *Id.* (internal quotation marks omitted). Carter's contentions that Pryor did not apply the internal revenue laws correctly do not state a cognizable *Bivens* claim against Pryor for alleged violations of Carter's constitutional rights. And Carter has also failed to establish a waiver of sovereign immunity against the United States regarding the alleged violation of his constitutional rights in Counts VI-X.

  **C.**  **Carter has failed to show a waiver of sovereign immunity for Count XI.**

Count XI avers that Pryor caused administrative summonses to be issued without the signature of an approving officer and contends that, as a result, Carter is entitled to damages under

11

the Administrative Procedures Act and 26 U.S.C. § 7429. *See* Doc. 32, ¶¶ 112-113, 121 at 28-29, 30-31. Because Carter sues Pryor for actions taken in his official capacity, "the action is in fact one against the United States" and the principles of sovereign immunity apply. *Atkinson v. O'Neill,* 867 F. 2d 589, 590 (10 Cir. 1989) (noting that a "suit against IRS employees in their official capacities is a suit against the United States").

Section 7429 is titled "Review of jeopardy levy or assessment procedures," and accords "administrative review" to assessments made under 26 U.S.C. § 6851(a) ("Termination assessments"), 26 U.S.C. § 6852(a) ("Termination assessments in case of flagrant political expenditures of section 501(c)(3) organizations"), 26 U.S.C. § 6861(a) ("Jeopardy assessments of income, estate, gift, and certain excise taxes, or 6862"), 26 U.S.C. § 7429(a) ("Jeopardy assessment of taxes other than income, estate, gift, and certain excise taxes"), or to levies "made under section 6331(a) less than 30 days after notice and demand for payment is made." § 7429(a)(1)(A). *If* the taxpayer requests an administrative review of any of these actions within thirty days of being notified that the IRS is taking the actions, the Secretary will "redetermine" if the proposed action is reasonable, and then, *if* the taxpayer is dissatisfied with the Secretary's decision, the taxpayer may file a petition in district court within ninety days of receiving the Secretary's decision. *See* § 7429(a)(2), (3) & (b). The statute is clearly inapplicable to a claim that a summons was issued without the signature of an approving officer. Carter's complaint alleges no facts to support a right to judicial review under § 7429. And the APA does not provide an independent grant of jurisdiction for review of Carter's claim. *See Lonsdale*, 919 F.2d at 1444; *Fostvedt v. United States*, 978 F.2d 1201, 1203-04 (10th Cir. 1992). Carter has failed to allege facts to show a waiver of sovereign immunity on Carter's claim for damages in Count XI, thus it must be dismissed for lack of subject-

matter jurisdiction. *See Dahn*, 127 F.3d at 1251.

If the Court did have jurisdiction over Carter's claim, however, it would grant judgment in favor of the Defendants. Pryor established as a matter of law that the regulations permit him to issue summonses without the signature of an approving officer if he types on the face of the summons that he obtained the officer's approval, and that he complied with the regulations. *See* Doc. 24, Ex. D, D-1, D-2.

### D.     Jurisdiction over Count XII is prohibited.

Count XII seeks to challenge the "statutory language, construction, and administration of 26 U.S.C. § 6331," under the APA. Doc. 32 ¶ 123, at 31. Carter alleges that the Defendants intentionally misapplied § 6331(a) by issuing administrative notices of levy that have not been authorized by the Secretary because Carter is not subject to the statute. *Id.* ¶¶ 124-128 at 31-32. Carter asserts that Pryor thus issued a "false instrument for filing," giving rise to an action for damages under the APA. *See id.* ¶ 129 at 32. In summary, Carter attempts, in Count XII, to invoke a review under the APA of the construction of 26 U.S.C. § 6331 that would conclude he is not liable for income taxes under that section.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, prohibits declaratory judgments in matters relating to an individual's federal taxes. *See Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004). The APA does not override either the Anti-Injunction Act or the Declaratory Judgment Act with regard to judicial review, nor does it independently grant jurisdiction to review agency decisions. *See Fostvedt*, 978 F.2d at 1203-04. The Court, therefore, does not have jurisdiction to review § 6331 under the APA.

In addition, the Tenth Circuit has long held that arguments contending that levies are invalid

under § 6331(a) on the basis that Carter alleges (*i.e.*, that the taxpayer is not an officer, employee, or elected official of the United States or the District of Columbia, or of any agency or instrumentality of the United States or the District of Columbia) are frivolous. *See James v. United States*, 970 F.2d 750, 755 n.9 (10th Cir. 1992).

### IV.   The United States is entitled to dismissal or summary judgment on Count III.

Count III seeks compensatory damages and asserts that the Defendants failed to comply with 26 U.S.C. §§ 6212 and 6213(a)[3] because its 2005-2007 Notices of Levy were issued without a Notice of Deficiency first being issued to Carter. Accordingly, Carter asserts that he is entitled to "a review of Defendants' unlawful collection activity" and "compensatory damages" arising from the levy collection of money owed to Carter from third parties under 26 U.S.C. § 7433. Doc. 32, ¶¶ 57-58 at 15.

Section 7433(a) presents a limited waiver of sovereign immunity by authorizing a civil action if "any officer or employee of the Internal Revenue Service" recklessly, intentionally, or negligently disregards any provision of Title 26 or a corresponding regulation in the "collection of Federal tax." But the civil action must be brought "against the United States," § 7433(a), as opposed to against the employee, and a claim for damages is available only if the taxpayer has first exhausted his administrative remedies within the IRS[4]. *See* § 7433(d)(1)("A judgment for damages shall not

---

[3] Section 6213(a) provides that "no assessment of a deficiency . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer. . . ."

[4] Although the United States argues that failure to exhaust his administrative remedies by filing an administrative claim that meets the requirements of 26 C.F.R. § 301.7433 (and also in 26 C.F.R. § 301.7432) is jurisdictional, it appears that failure to meet the exhaustion requirements of 26 U.S.C. § 7433 (and of § 7432), which are located only in a "limitations" section of the statutes and address the Court's authority to award damages, as opposed to the

be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."); 26 C.F.R. § 301.7433-1(d) (stating, "no action under paragraph (a) of this section shall be maintained in any federal district court before" a decision is rendered on an administrative claim or unless 6 months has passed since the administrative claim was filed and no decision has been rendered, unless the 2-year statute of limitations will have run before the 6-month period has expired).

---

Court's jurisdiction over the suit or a filing limitation, may be nonjurisdictional in nature under the analysis set forth in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). *See Pollinger v. United States*, 539 F. Supp. 2d 242, 257 (D.D.C. 2008) (applying *Arbaugh* to hold that the exhaustion limitations set forth in §§ 7432 and 7433 are not jurisdictional but are mandatory). Exhaustion requirements have been recognized as "typically" nonjurisdictional most recently in *Jones v. Bock*, 549 U.S. 199, 212 (2007). Although the IRS clearly views exhaustion as a prerequisite to filing suit by stating that "no action . . . shall be maintained in any federal district court" until the exhaustion requirements are met, *see* 26 C.F.R. § 301.7433(d)(1); 26 C.F.R. § 301.7432(e)(1), the Supreme Court has indicated that it is *Congress* who must impose jurisdictional limitations. *See Arbaugh*, 546 U.S. at 516 ("when Congress does not rank a statutory limitation . . . as jurisdictional, courts should treat the restriction as nonjurisdictional in character"). Although the Court has found an unpublished opinion from the Tenth Circuit stating in dicta that, "[t]o bring an action under [§§ 7432 or 7433], the taxpayer must exhaust her administrative remedies," *Burge v. I.R.S.*, No. 94-1063, 39 F.3d 1191, 1994 WL 596586, *2 (10th Cir. Nov. 1, 1994), that nonbinding dicta was issued before the Supreme Court issued its opinions explaining when an exhaustion requirement is jurisdictional. Similarly, the Court also declines to follow the rationale in an earlier opinion from this District set forth in *Bowers v. J & M Discount Towing, LLC.*, 472 F. Supp. 2d 1248, 1271 (D.N.M. Oct. 31, 2006) (Browning, J.), in which the Court held that, "[b]efore a plaintiff may file such a suit [under § 7433], however, the court must determine 'that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.' 26 U.S.C. § 7433(d)(1)" and also held that such exhaustion was a jurisdictional requirement by relying on cases from other circuits published in 1994. The Court concludes that exhaustion of administrative remedies is a mandatory, but nonjurisdictional, requirement for pursuing a claim for damages under § 7432 and § 7433. *Cf. Rosson v. United States*, No. 04-1423, 127 Fed. Appx. 398, *400, 2005 WL 629759, **2 (10th Cir. Mar. 18, 2005) (holding that, because 26 U.S.C. § 7422(a) specifically provides that, "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary," and the plaintiffs "failed to allege that they sought administrative relief, which would be necessary to establish a waiver of sovereign immunity," their "claim for a refund was properly dismissed for lack of subject-matter jurisdiction").

To exhaust remedies, the taxpayer must send a notice of administrative claim "to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides." § 301.7433-1(e)(1). "The administrative claim shall include . . . [t]he name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim." § 301.7433-1(e)(2)(i), and must state "the grounds" of the claim, "a description of the injuries incurred by the taxpayer," [t]he dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable" and the taxpayer's signature. § 301.7433-1(e)(2)(ii)-(v).

Carter does not allege in his Amended Complaint that he exhausted his administrative remedies on Count III, but he contends in his response brief that the United States conceded the Court's jurisdiction on this Count and referred to an exhibit attached to his original Complaint captioned as a "Verified Notice of Administrative Claim and Demand to Release Notice of Federal Tax Lien and Return Property Seized" with his initial Form 12277 "Application for Withdrawal of Filed Form 668Y, Notice of Federal Tax Lien," which he had incorporated by reference in his Amended Complaint. *See* Doc. 40 at 18; Doc. 1, Ex. A.

The Court concludes that this document does not satisfy § 301.7433's requirements for exhaustion by filing an "administrative claim" regarding the levies. In the document, whose title and first paragraph purports to challenge only the 2005 tax lien, Carter submitted only his name and post-office-box address. In other documents that accompanied the "Notice," he filled out the box requesting his "street address" with a P.O. box number; filled out the boxes requesting his home and work telephone numbers with "N/A" and put "exempt (b)(6)" in the box requesting his social security number. *See* Doc. 1, Ex. A at 2. He did not give the IRS any "convenient times to be

16

contacted," and in fact precluded contact via phone by refusing to give telephone information. Because he did not allege exhaustion of administrative remedies for Count III, and the evidence Carter attached to his Complaint and incorporated by reference in his Amended Complaint demonstrates that Carter failed to completely satisfy the requirements for filing an administrative claim under 26 C.F.R. § 301.7433, and compliance with 26 C.F.R. § 301.7433 is mandatory for an award of damages to be made, the Court concludes that Carter failed to state a claim for damages under § 7433 in Count III.

In the alternative, if the Court concluded that Carter's "Notice" was sufficient to satisfy the exhaustion requirements such that he could state a claim for damages, the Court would grant summary judgment to the United States on Count III.  The United States has conclusively established that a notice of deficiency was in fact mailed to Carter on March 30, 2001 for tax years 1995-97, and on February 9, 2001 for tax years 1998-1999.  *See* Doc. 22, Ex.1 and att. Ex. 1-A, 1-B, and 1-C. The levies were, therefore, procedurally valid as a matter of law.

And insofar as Carter contends in his response brief that he seeks damages based on a levy for the 2001-2002 tax liabilities for which the United States has not provided proof of service of a notice of deficiency, the record conclusively establishes that the levy Carter complains about was based solely on tax liabilities for tax years 1995-1999 and not for tax years 2001-2002.  *See* Doc. 22, Ex. A.  The United States is alternatively entitled to summary judgment on Carter's claim under Count III.

**V.      Carter has failed to state a claim for damages on Count IV under 28 U.S.C. § 7432.**

Count IV asserts that the United States failed in 2007 to respond in the way Carter demanded to Carter's administrative application for withdrawal of the Notices of Federal Tax Lien; that its

refusal to release the tax liens was a final agency action; and that he has been damaged and his name has been slandered by the existence of the liens. *See* Doc. 32 ¶¶ 60-61 at 16. Carter seeks review of the decision and damages under 28 U.S.C. § 7432. *See id.* ¶ 64.

Under § 7432(d), however, "judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." Carter's Amended Complaint does not allege that he exhausted the administrative remedies required for § 7432. Instead, he alleges that, for this Count, he exhausted administrative remedies required under "26 C.F.R. § 301.7433(a)(1), (b)(1), and (e)" on April 30, 2007, by attaching the same "Notice" discussed, *supra*, which is captioned as a "Verified Notice of Administrative Claim and Demand to Release Notice of Federal Tax Lien and Return Property Seized" with his initial Form 12277 "Application for Withdrawal of Filed Form 668Y, Notice of Federal Tax Lien." *See* Doc. 32, ¶ 62 at 16; Doc. 1, Ex. A. But § 7432 requires exhaustion of the administrative requirements set forth in 26 C.F.R. § 301.7432, which are different from those required for an action brought under § 7433 and set forth in 26 C.F.R. § 301.7433. For example, an administrative claim that meets the statutory prerequisite for recovering damages under § 7432 must "be sent in writing to the district director (marked for the attention of the Chief, Special Procedures Function) in the district in which the taxpayer currently resides or the district in which the notice of federal tax lien was filed," § 301.7433(1), but Carter addressed his document to the "Area 11, Area Director, Compliance Technical Support Manager," Doc. 1, Ex. A at 3. Further, "[t]he administrative claim shall include [] (i) [t]he name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim," § 301.7433(2), but Carter submitted only his name and post-

18

office-box address and filled out the box requesting his "street address" with a P.O. box number; filled out the boxes requesting his home and work telephone numbers with "N/A" and put "exempt (b)(6)" in the box requesting his social security number. *See id.*, Ex. A at 2. Because the evidence Carter attached to his Complaint and incorporated by reference in his Amended Complaint demonstrates that Carter failed to follow the procedures and requirements for filing an administrative claim under 26 C.F.R. § 301.7432, and compliance with 26 C.F.R. § 301.7432 is mandatory, the Court concludes that he has failed to state a claim for damages under § 7432 in Count IV.

**VI.     Carter has failed to state a claim for violation of 26 U.S.C. § 6103 in Count V.**

Count V avers that the United States and Pryor wrongfully disclosed Carter's confidential information, specifically his social security number, by including it on the notices of federal tax liens that were filed in the public records and in the notices of levy that were issued to third parties. *See* Doc. 32 ¶¶ 66-69 at 17-18. Carter asserts that, as a result, he is entitled to statutory and punitive damages under 26 U.S.C. §§ 6103, 7431, and 7433. *See id.*, ¶ 74 at 19.

Although § 6103 prohibits the disclosure of a taxpayer's personal information in the tax collection process, it specifically authorizes an IRS employee to disclose, to the extent necessary, tax return information "relating to any . . . collection activity."  *See* § 6103(k)(6). The applicable Treasury Regulations specifically permit disclosure of personal information "to locate assets in which the taxpayer has an interest . . . [and] to apply the provisions of the Code relating to establishment of liens against such assets." Treas. Reg. § 301.6103(k)(6)-1T(a)(1) (2003).  Thus, "the general rule is that liens and levies do not constitute unauthorized disclosures under § 6103." *Long v. United States*, 972 F.2d 1174, 1180 (10th Cir. 1992); *see Mann v. United States*, 204 F.3d 1012, 1018 (10th Cir. 2000) (stating, "6103(k)(6) and the relevant regulations do permit disclosure

19

of tax return information when made in notices of lien and levy"). Carter has failed to state any facts to support a claim of unlawful disclosure under § 6103 and Count V must, therefore, be dismissed. *See Iqbal*, 129 S.Ct. at 1251.

**NOW, THEREFORE**, Carter's Amended Complaint, *Doc. 32*, is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

_____
**MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE**